UNITED STATES of America, Plaintiff-Appellee,

v.

Owen LAMBERT, Defendant-Appellant.

No. 71-1093.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1972.

Decided June 12, 1972.

Philip L. Padden, Herbert S. Bratt, Milwaukee, Wis., for defendant-appellant.

David J. Cannon, U. S. Atty., Richard E. Reilly, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge, and GRANT, District Judge.*

GRANT, District Judge.

The appellant, Owen Lambert, was found guilty by a jury of Counts 1 and 2 of a three-count indictment charging

---

* Chief District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

him with violating 18 U.S.C. § 659 by unlawfully, willfully and knowingly receiving stolen chattels which had been stolen from interstate commerce. In particular, the defendant was found guilty of knowingly receiving stolen Haggar slacks on August 26, 1969, and knowingly receiving stolen Polaroid film on May 27, 1969, but was acquitted of receiving stolen coats on July 5, 1968. The defendant was sentenced to one year and one day imprisonment on each count with the sentences to be served concurrently. He was also fined $500.00 on each count.

The chief government witness against the defendant was Reuben Ramos, a former employee of Spector Freight System from which the merchandise received by the defendant had been stolen. Prior to the defendant's trial, Ramos pleaded guilty to the actual theft of the merchandise involved. Ramos testified regarding the three separate deliveries of the merchandise to the defendant and the related price negotiations. Both on direct and cross-examination, Ramos stated that when the defendant asked him where he had obtained the merchandise, he told the defendant that it came from Chicago.

Another government witness, Jesus Ramos, Reuben's brother, testified that the defendant told him he had asked his own probation officer for permission to call Reuben. Jesus also testified that the defendant told him his brother "should not squeal on him because he had two witnesses".

The defendant admitted buying and receiving the merchandise described in the indictment but denied any knowledge that it was stolen. As background, he testified that he was engaged in many businesses, including a business known as Owen Lambert Health and Recreational Products through which he sold vitamins, health aids and hunting products, including guns; a manufacturing firm which produced clothing on a subcontracting basis for other manufacturers; and a business which involved the buying of various types of merchandise at auctions, from factory close-outs or from surplus sales operations. It was against this background that the defendant testified that Ramos told him he had purchased his merchandise in Chicago at factory close-outs. He also testified that at the time of the purchase there were no indications, communications, or documentary evidence indicating that the merchandise was stolen.

On cross examination, the defendant was asked, over objection, whether he had purchased from Ramos in 1968 and 1969 merchandise other than the items listed in the indictment. In response, the defendant stated that he could not "recall purchasing any other items from Reuben. Other than the items that were listed." As a rebuttal witness, Reuben Ramos testified, over objection, that during 1968 and 1969 he had, in fact, sold to the defendant numerous stolen items other than those listed in the indictment. The other purchases by the defendant were described in detail by Ramos.

In appealing his conviction, the appellant advances three arguments. First, the appellant argues that there was insufficient evidence to sustain a finding that he had knowledge that the merchandise he purchased was stolen. Secondly, it is contended that the jury verdicts were fatally inconsistent. The third argument is that it was prejudicial error for the district court to permit the introduction of evidence of other apparent criminal activity on the part of the appellant, i. e., purchases other than those described in the indictment.

I

Regarding the issue of the defendant's knowledge that the goods were stolen, we are convinced that there was sufficient evidence in the record to sustain the jury's finding that the defendant knowingly received stolen merchandise. Reuben Ramos testified that the defendant was in possession of the Polaroid film on the same evening that it was

stolen and that he personally negotiated the price to be paid. Ramos further testified that the Haggar slacks were delivered to the defendant's manufacturing plant the day after their theft from the freight company, that the defendant was present when the slacks were delivered, and that he once again personally negotiated the price to be paid. Although the defendant contended that he paid Ramos for the goods with checks, he did not produce any cancelled checks or other records indicating payment by check. The defendant's credibility was undoubtedly further discredited when Ramos testified on rebuttal that he had in fact sold the defendant numerous other stolen items in 1968 and 1969 even though the defendant had earlier stated on cross examination that he could not recall any other purchases. There was also the testimony of Jesus Ramos that the defendant had told him that his brother, Reuben, should not squeal on the defendant "because he had two witnesses". Also, as noted by the government, the jury was properly instructed that "mere possession of recently stolen property warrants the inference of guilty knowledge unless a satisfactory explanation of possession is made consistent with innocence. . . ." United States v. Carengella, 198 F.2d 3, 7 (7th Cir. 1952). Obviously, the jury did not accept the defendant's explanation of his possession of the stolen merchandise as satisfactory. United States v. Cosentino, 372 F. 2d 61, 63 (7th Cir. 1967).

■ In view of all the testimony concerning the circumstances surrounding the purchases, including the manner in which the sales were conducted, the timing of the sales, the prices paid for the goods, etc., we cannot say that it was unreasonable for the jury to find that the defendant knew that he was purchasing stolen goods. It is well recognized that "circumstantial evidence is enough to sustain a finding of knowledge of the stolen character of the property". United States v. Riso, 405 F.2d 134, 138 (7th Cir. 1968).

Furthermore, we agree with the government that the instant case and Cherry v. United States, 78 F.2d 334 (7th Cir. 1935) are factually distinguishable. In the *Cherry* case, the defendant's sole business was a grocery which he operated on a cash basis. Not only had he been in the grocery business for twenty-six years but "his reputation was pronounced good by the testimony of numerous men of apparent reliability who knew him well". *Cherry, supra*, at 335. He had made a single purchase, for cash and without a receipt, of 650 cases of canned goods which later proved to be stolen. However, as stated in the opinion:

". . . appellant was in the grocery business, the conduct of which necessitated the purchase of merchandise of the character here involved. He stated that he sold for cash and bought for cash. He did not keep his money in a bank. The practice of not depositing money in a bank was not unusual in 1932, 1933, and January, 1934, and therefore the adoption of such practice was not suggestive of an attempt to avoid creating evidence usable in a criminal prosecution.

"While the evidence showed he purchased the goods from a thief, or the representative of a thief, and that the thief had obtained possession only a short time before, yet the fact remains that he purchased goods which he needed and paid a fair market price therefore; that the transaction took place at his store and in the daytime." *Id.*, at 336.

Needless to say, we do not consider the circumstances in the case at bar to be so exonerating.

## II

■ The appellant's second contention, that the verdict of the jury is fatally inconsistent, is without merit. The appellant concedes that consistency in a verdict upon separate counts is not necessary since each count is viewed as a separate indictment, citing Dunn v.

United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1931). It was further recognized that there have been cases, similar to the instant case, where inconsistent verdicts have been upheld which were based upon indictments charging the defendant with separate violations of the same section of the criminal code, but allegedly occurring at different times, citing United States v. Anderson, 362 F.2d 81 (7th Cir. 1966). The appellant then argues as follows:

> "It would seem, however, that to sustain such a verdict there must be some separate evidence as to the particular counts charged. If there is, of course a finding of guilt as to one count but not another is no longer inconsistent because they rest upon different proof."

Despite the appellant's suppositions, we are bound by the controlling law which is clearly to the contrary. As stated in United States v. Russo, 335 F.2d 299, 301 (7th Cir. 1964):

> "A verdict of acquittal on one count does not invalidate a verdict of guilty on another count, even where the same evidence is offered in support of each count. United States v. Bazzell, 7th Cir. 1951, 187 F.2d 878, 884, cert. den. 342 U.S. 849, 72 S.Ct. 73, 96 L.Ed. 641, and cases there cited."

■ Moreover, we do not necessarily agree that the record in the instant case requires a finding that the proof of the defendant's knowledge was the same as to all three counts. The record does show at least some separate testimony regarding each of the three transactions. In addition, the transactions involved in Counts 1 and 2 occurred some ten to thirteen months later than the Count 3 transaction. The jury was surely entitled to find that the defendant possessed the requisite knowledge during the two later transactions but not during the first transaction.

### III

Finally, the appellant contends that prejudicial error was committed when evidence was introduced concerning purchases he allegedly made from Ramos during 1968 and 1969 of items other than those listed in the indictment. Appellant's trial counsel had objected to the introduction of the evidence arguing that it was immaterial and constituted evidence of other crimes which could have provided for additional counts in the indictment. The appellant contends that the introduction of the evidence, in effect, "brought before the jury conduct on the Defendant's part which was apparently additional criminal activity".

■ The appellant recognizes that evidence of other apparent criminal activity is admissible when it is so related to or connected with the crime charged that the proof of one incidentally involves the other or explains the circumstances thereof and when it is used to establish intent or knowledge where the latter are necessary elements of the crime charged. United States v. Phillips, 375 F.2d 75, 79 (7th Cir. 1967) and United States v. Turner, 423 F.2d 481, 484 (7th Cir. 1970). In the instant case, the appellant argues that the evidence introduced cannot be considered as incidentally involved with the crime charged, the appellant noting that no attempt was made "to tie down the further sales from Ramos to the Defendant by specific dates or specific lots of merchandise". The appellant further points out that the evidence of other purchases was not introduced to show knowledge or intent since the government specifically disclaimed this as the basis for the introduction of the evidence. Instead, the testimony of Ramos of additional purchases by the defendant was specifically used, as acknowledged by both the district court and the government, to attack the credibility of the defendant, the defendant having testified on cross-examination that he did not recall purchasing any merchandise from Ramos other than that listed in the indictment. The appellant argues that the latter was not an appropriate basis for the use of such evidence and as such, constituted prejudicial error.

■■ The general rule is that a witness may not be impeached by contradiction as to collateral or irrelevant matters elicited on cross-examination. See United States v. Battaglia, 394 F.2d 304, 315 (7th Cir. 1968) and authorities cited therein; 98 C.J.S. Witnesses § 633. The test, in turn, as to whether a matter is collateral is "whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case". 98 C.J.S. Witnesses § 633. Stated more accurately, could the fact be shown in evidence for any purpose independent of the contradiction. 3A Wigmore on Evidence § 1003 (Chadbourn rev. 1970). If the answer to either test is in the affirmative, the matter is not a collateral issue and impeachment would be proper. See People v. Schwartzman, 24 N.Y.2d 241, 299 N.Y.S.2d 817, 247 N.E.2d 642 (1969) for an excellent discussion of this entire area.

■ In the instant case, the testimony of Ramos on rebuttal concerned other purchases by the defendant which were closely related to the purchases charged in the indictment. As stated in United States v. Marine, 413 F.2d 214, 216 (7th Cir. 1969),

> ". . . evidence sought to be introduced of a similar offense is admissible if it bears 'a strong resemblance' to the pattern of the offense charged, United States v. Iacullo, 226 F.2d 788, 793 (7th Cir. 1955), cert. denied, 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839. . . . Such evidence is highly relevant to the issue of knowledge and intent, as tending to show a consistent pattern of conduct, Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 93 L.Ed. 919 (1949). . . ."

Thus, the evidence of the other similar purchases could have been introduced during the government's case in chief since it would have logically tended to show knowledge on the part of the defendant, the latter being an essential element of the crime charged. United States v. Turner, *supra*, 423 F.2d at 484. As such, it would not constitute a collateral matter which would preclude impeachment by contradiction. Admittedly, it might be argued that the rebuttal evidence of other purchases should preferably have been introduced by the government in its case in chief. Nevertheless, we cannot say that under the circumstances its admission in rebuttal was erroneous. United States v. Plata, 361 F.2d 958, 962 (7th Cir. 1966).

Accordingly, the judgment of conviction is affirmed.